FILED
2012 Apr-17  AM 08:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **FREDERICA CRUTCHER,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-09-S-1484-NE** |
| | ) | |
| **MILLENNIUM NURSING AND REHAB CENTER, INC.,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Frederica Crutcher, commenced this action against her former employer, defendant Millennium Nursing and Rehab Center, Inc., on July 24, 2009.[1] Her initial complaint contained a claim for unpaid hours, including overtime, in violation of the the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*[2] Plaintiff amended her complaint on September 9, 2010, to add a claim for gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").[3] Defendant moved for summary judgment on the Title VII claim.[4] Upon consideration of the motion, briefs, and evidentiary submissions, the court concludes that the motion is due to be granted.

---

[1] Doc. no. 1 (Complaint).

[2] *Id.* ¶¶ 16-34.

[3] Doc. no. 26 (Amended Complaint) ¶¶ 24-33.

[4] Doc. no. 34.

# I.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[5]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact 'exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party.'"  *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1284-85 (11th Cir. 1997)).

"In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v.*

---

[5] Rule 56 was amended, effective December 1, 2010, in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "will not affect continuing development of the decisional law construing and applying these phrases." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

*City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation."  *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921); s*ee also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II.  BACKGROUND

### A.  The Parties

Plaintiff, Frederica Crutcher, worked as a certified nursing assistant ("CNA") for defendant, Millennium Nursing and Rehab Center, Inc. ("Millennium"), from December of 2007 until her termination on June 10, 2009.[6]  Millennium is a nursing facility, primarily serving elderly patients.[7]  At any given time, Millennium employs

---

[6] Doc. no. 34-1 (Deposition of Frederica Crutcher), at 71-72 (hire); *see id.* at 178 (discharge).
[7] *Id.* at 244-45.

approximately 115 people.[8]  Of that number, "typically 105 to 110 are female."[9] According to Crutcher, during her time at Millennium, "[m]aybe nine" employees were male.[10]  Crutcher testified that the male employees enjoyed preferential treatment, because "men are more valuable in the healthcare profession than a woman."[11]  However, the sole basis of her gender discrimination claim is her discharge; she does not assert a claim on the basis of disparate treatment in the workplace or retaliation for the complaints she made about preferential treatment afforded male employees.[12]  Crutcher's supervisors at Millennium included Karen Toney, Staffing Coordinator, Doris White, Assistant Director of Nursing, and Lisa Rose White, Administrator.[13]

## B.    Millennium Policies

### 1.    Scheduling

At the end of each month, the Staffing Coordinator is responsible for setting the employee shift schedule for the following month.[14]  Before the schedule is made,

---

[8] Doc. no. 34-4 (Declaration of Lisa Rose White) ¶ 6.

[9] *Id.*

[10] Deposition of Frederica Crutcher, at 75 (bracketed alteration supplied).

[11] *Id.* at 254; *see also id.* at 199-216.

[12] *See* doc. no. 26.

[13] Deposition of Frederica Crutcher, at 75-76, 90; doc. no. 34-5 (Declaration of Karen Toney) ¶ 2. Although Toney is one of the principal actors in Crutcher's discharge, she apparently was never deposed.

[14] *See* doc. no. 34-3 (Deposition of Lisa Rose White), at 79-81.

4

employees have the opportunity to submit "request off" forms, indicating their desire not to work on a particular day of the upcoming month.[15]   Prior to generating the schedule for the month, the Staffing Coordinator notes which days which employees have requested not to be scheduled, to ensure that employees are not scheduled for days they have off.[16]   If an employee requests a day off after the schedule has been made, the schedule can be modified to reflect the change.[17]

The monthly, or "master" schedule created by the Staffing Coordinator is posted on a bulletin board.[18]   In addition to the master schedule, management personnel at Millennium occasionally produce daily or weekly assignment sheets.[19]   However, the master schedule is modified to reflect any approved changes.[20]   In other words, the master schedule always reflects the accurate state of shift scheduling, and a daily sheet contradicting it does not supercede it.   Only the master schedule is considered the official schedule.[21]

### 2.      "No call, no show"

Millennium gives all of its employees an employee handbook outlining the

---

[15] *Id.* at 80.

[16] *Id.*

[17] *Id.* at 80-81.

[18] Deposition of Frederica Crutcher, at 193.

[19] Deposition of Lisa Rose White, at 84-85.

[20] *Id.* at 85-86.

[21] Declaration of Karen Toney ¶ 2.

company's policies.[22]  The handbook lists violations of company policy that will lead to discipline.  Those actions classified as serious infractions "may result in immediate dismissal without warning for the first offense."[23]   Listed among those serious infractions is "[n]ot reporting to work, as scheduled, without notifying your immediate supervisor (no call no show)."[24]  The company supplemented the policy as stated in the handbook with a memorandum stating that an employee who cannot make his or her shift must call management at least two hours before the shift is scheduled to begin.[25]  However, since Lisa Rose White became Administrator in May of 2008, employees who have contacted management during their scheduled shifts have not been classified as no call, no show, or discharged.[26]

## C.    Crutcher's Termination

At some point prior to June 9, 2009, Crutcher wrote a note to Karen Toney, Staffing Coordinator, stating "I'm not going to be able to work 6/9/09."[27]   Toney

---

[22] *See* Deposition of Frederica Crutcher, at 77 (testifying that she received a copy of the handbook when she began working at Millennium).

[23] Doc. no. 34-2 (Exhibits to Deposition of Frederica Crutcher), at Ex. 1 (Employee Handbook), at ECF 22.

[24] *Id.* at ECF 23.

[25] Deposition of Lisa Rose White, at Ex. 8 (Employee Absenteeism Memorandum, Jan. 26, 2009).

[26] Deposition of Lisa Rose White, at 133-35.

[27] Doc. no. 36-1 (Note of Frederica Crutcher).

wrote "you are off" on the note, signed it, and returned it to Crutcher.[28]  The master schedule for June of 2009, prepared by Toney, lists Crutcher as assigned to work on June 9th.[29]  For June 10th, the space next to Crutcher's name is blacked out.[30]  The record does not contain the daily schedule for June 9th, but Crutcher alleged in her EEOC charge and amended complaint that she was not listed on the daily schedule for that day.[31]

Crutcher did not report to work on June 9, 2009.[32]  Karen Toney and Doris White, Assistant Director of Nursing, stated that they attempted to contact her by calling two cellular telephone numbers she had provided to the company.[33]  Crutcher testified that she had removed one of the cellular numbers from the employee contact list, because she no longer had that phone.[34]  She further testified that she had lost the

---

[28] *Id.*  The note is not dated, so it is unclear whether Toney approved the day off before or after making the master schedule for June.

[29] Deposition of Lisa Rose White, at Ex. 7 (Master Schedule).

[30] *Id.*

[31] Doc. no. 26 ¶ 28.  Plaintiff made no mention of the note or the approved day off in her EEOC charge or her complaint, both of which state that she missed work on June 9th because the daily schedule listed her as off that day.

[32] *See, e.g.*, Deposition of Lisa Rose White, at Ex. 5 (Personnel Action, Frederica Crutcher, June 10, 2009).

[33] Deposition of Frederica Crutcher, at 179-80 ("They said they had tried to call me."); Deposition of Lisa Rose White, at 67 ("And [Toney] said, [']I called both of her cell phones, and she did not answer either one[']") (bracketed alterations supplied); Personnel Action, Frederica Crutcher, June 10, 2009 (stating that Crutcher "did not call or return calls").

[34] Deposition of Frederica Crutcher, at 180.

other phone on June 7th.[35]  On June 10th, Toney recommended to Lisa Rose White

that Crutcher be discharged for a no call, no show violation.[36]  Lisa Rose White

approved the recommendation.[37]

When Crutcher came into work on June 10, 2009, she met with Toney and

Doris White.[38]  During the meeting, Toney and White said that they had tried to call

Crutcher during her shift on the previous day, but were not able to reach her.[39]

Crutcher told them that she had received no call, message, or other indication that they

had tried to contact her.[40]  Crutcher told them that she was not supposed to be at work

---

[35] *Id.* ("I lost it actually the Sunday before whatever date that happened.").  June 9, 2009 was a Tuesday, therefore, the Sunday before was June 7th.

[36] Deposition of Lisa Rose White, at 66.

[37] *See* Personnel Action, Frederica Crutcher, June 10, 2009.

[38] Deposition of Frederica Crutcher, at 178.

[39] *Id.* at 179-80.

[40] *Id.* at 181.  In her response brief, plaintiff states that the "cellular telephone in Plaintiff's possession indicated there was no record that she received a call from anyone at Millennium."  Doc. no. 36 (Response in Opposition to Summary Judgment), at 2.  However, that is not an accurate characterization of the testimony, which is set out in full below.

Q:     And did you say to Ms. Toney, or Ms. Toney and Ms. White, well, ["]I lost those phones["]?

A:     I lost one cell phone.  The other phone on one of the phone lists, I had marked that number out.

Q:     Okay.

A:     The phone that I was using, I lost it actually the Sunday before whatever date that happened.  I lost it.

Q:     Did you receive a message or indication that Millennium had attempted to

on June 9th, but because Toney and Doris White were yelling at her, she was unable to explain that Toney had specifically given her the day off.[41]  As they were yelling at her, she wrote a statement, which reads:  "I really didn't know [that] I was on to report to work[,] in which I was wrong[,] but I never but suspended [*sic*] and there have been times when people [were] NCNS [no call, no show] and nothing was done[,] so I feel that I should have been giv[en] a chance."[42]  Crutcher testified that

---

Q:  call you the day before?

A:  No.

Q:  Did you tell that to Ms. Toney and Ms. White?

A:  That I — that I hadn't —

Q:  Correct.

A:  No.

Q:  That ["]I got no message, there was nothing on my phone that showed that, you know, I received a call from this number,["] anything?

A:  Yes.

Q:  You stated that to them?

A:  Yes.

Deposition of Frederica Crutcher, at 180-81 (bracketed alterations supplied).  Crutcher did not ever testify that she found her phone, much less that it specifically did not indicate any missed calls from Millennium.  She simply said "yes" (moments after answering "no") in response to a question from defendant's counsel, which did not establish that she had regained possession of the phone by the time of the meeting on June 10th, or at any other time.

[41] Deposition of Frederica Crutcher, at 185.

[42] Personnel Action, Frederica Crutcher, June 10, 2009 (bracketed alterations supplied).

she tried to argue that another CNA, Roy Daniels, had been a no call, no show on several occasions without consequences, but Toney and Doris White yelled at her, asking when Daniels had ever been a no call, no show.[43]   Rather than continuing to argue with them, she let the subject drop.[44]   She was then walked out of the premises.[45]

Upon returning home, Crutcher searched for, and found, the note approving her day off.[46]   She called Millennium's corporate office to complain about her termination, and faxed in a copy of the note, but the corporate representative told her she had to raise the issue with Lisa Rose White.[47]   Crutcher did not return to Millennium to attempt to show the note to Toney, because she felt Toney "set [her] up to be terminated."[48]   Crutcher testified that Toney was intent on firing her because she had previously complained to corporate about favorable treatment given to male employees.[49]   About four days after she was terminated, Crutcher met with Lisa Rose White, who refused to discuss the decision or to acknowledge the note when Crutcher

---

[43] Deposition of Frederica Crutcher, at 232.

[44] *Id.*   ("And Lisa started yelling, ['W]hen was Roy a no call, no show?  When was he a no call, no show?[']  And I'm like — I said ['F]orget it.  You know he was no call, no show.[']") (bracketed alterations supplied).

[45] *Id.*

[46] *Id.* at 197-98.

[47] *Id.* at 186-89.

[48] *Id.* at 199 (bracketed alteration supplied).  *See also id.* at 186.

[49] Deposition of Frederica Crutcher, at 219-20, 261, 265.

tried to show it to her.[50]  When Crutcher tried to tell White that Toney had approved the day off in advance, White told Crutcher that she would talk to Toney and get back to Crutcher.[51]  White never contacted Crutcher to follow up on their meeting.[52]  When shown the note during her deposition, White admitted that, assuming the note was genuine, Crutcher actually was not a no call, no show.[53]

## D.    Male Employees

Crutcher alleges that at least two male employees missed their shifts, failed to contact management, and yet were not discharged under the no call, no show policy. She does not allege that she was replaced by a male, and the record indicates that she was replaced by a female.[54]

### 1.    Stanley Townsend

Stanley Townsend is a dietary aide at Millennium.  On Friday, May 1, 2009, he was scheduled to work, but did not come in.[55]  He did not call in advance to inform management that he would be out.[56]  Management personnel asked other employees,

---

[50] *Id.* at 186-88, 220-21.

[51] *Id.* at 221-22.

[52] *Id.* at 222.

[53] Deposition of Lisa Rose White, at 70-71, *id.* at 77 ("Q:  Would you agree that if Ms. Toney in fact gave Ms. Crutcher the day off on June 9, 2009, that Ms. Crutcher was not a no call/no show that day?  A:  Yes.").

[54] Declaration of Lisa Rose White ¶ 14.

[55] Deposition of Lisa Rose White, at 116.

[56] *Id.*

including Crutcher, if they knew where Townsend was.[57]   A co-worker called Townsend to inform him that management was looking for him, and on the advice of that co-worker, Townsend called in and asked his supervisor to find someone to cover for him.[58]  He was also absent from work on the following Monday, May 4, 2009.[59] There is no indication in the record that he called into work that day.[60]  It is unclear whether he had arranged for someone else to cover his shift for May 4th.[61]  Townsend was not discharged, even though he had previously been disciplined for tardiness and failure to obey orders.[62]  On the personnel action form addressing the incident, it was not classified as a no call, no show violation.[63]

---

[57] Deposition of Frederica Crutcher, at 240.

[58] Deposition of Lisa Rose White, at 111-12; *id.* at Ex. 14 (Personnel Action, Stanley Townsend, May 1, 2009).  Plaintiff submitted the declaration of Isabella Sheen, a nurse who was employed at Millennium at the time of Townsend's absence.  Sheen stated that she "believe[s] contact was finally made with him on the third day [of his absence], but . . . not on the first two days."  Doc. no. 36-2 (Declaration of Isabella Sheen) ¶ 5 (bracketed alterations supplied).  However, Sheen's declaration directly conflicts with the Personnel Action, which was made contemporaneously with the events in question, and which indicates that Townsend was contacted on May 1st, *i.e.*, the first day.  Of greater significance, plaintiff frames her arguments in her response brief on the assumption that contact was made on May 1st.  *See* doc. no. 36 (Response in Opposition to Summary Judgment), at 11.  For that reason, the court will also assume that Townsend called in during the first day of his absence, May 1st.

[59] Deposition of Lisa Rose White at 113-14.

[60] *Id.* at 114.  *See also* Personnel Action, Stanley Townsend, May 1, 2009.

[61] *Id.* at 115 ("Q:  Wouldn't you agree, Ms. White, that she was saying he didn't show up for work on Monday?  A:  But if he found coverage to cover him then it was covered.  Q:  We just don't know that one way or the other?  A:  I don't.").

[62] Deposition of Lisa Rose White, at Ex. 11 (Personnel Action, Stanley Townsend, May 19, 2008); *id.* at Ex. 12 (Personnel Action, Stanley Townsend, June 17, 2008).

[63] *Compare* Personnel Action, Stanley Townsend, May 1, 2009 (classifying the violation as "Other") *with* Personnel Action, Frederica Crutcher, June 10, 2009 (classifying the violation as

### 2.    Roy Daniels

The record regarding Roy Daniels's failure to show up at work is less developed than that regarding Townsend, and plaintiff makes no mention of his name in her EEOC charge or amended complaint.[64]  Nor does plaintiff make any arguments in her brief on the basis of her disparate treatment *vis-a-vis* Daniels.  Roy Daniels, like plaintiff, was a CNA.[65]  Plaintiff submitted the declaration of Isabella Sheen, a nurse formerly employed at Millennium, in which Sheen stated that she once had to call Daniels to find out why he failed to come into work or call in advance.[66]  Daniels, who was listed on the master schedule as working that day, "said that he was watching a football game, and was not coming in."[67]  Lisa Rose White testified that she was unaware of any no call, no show violations by Daniels.[68]

### III.  DISCUSSION

Where, as here, the plaintiff seeks to prove discrimination with circumstantial evidence, the court must analyze the case using the burden-shifting analytical

---

"Unreported absence").

[64] *See* Deposition of Frederica Crutcher, at Ex. 11 (EEOC Charge); doc. no. 26.

[65] Doc. no. 36-2 (Declaration of Isabella Sheen) ¶ 6.

[66] *Id.*

[67] *Id.*

[68] Deposition of Lisa Rose White, at 125.  Plaintiff did not dispute this fact when it was included in defendant's summary judgment brief.  Thus, it is admitted for summary judgment purposes.  *See* doc. no. 8 (Uniform Initial Order).

framework first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).[69] Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of intentional discrimination. Establishment of the *prima facie* case creates a rebuttable presumption that the employer unlawfully discriminated against the employee.

If a plaintiff establishes a *prima facie* case of discrimination, the defendant employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action. If the employer is silent in the face of the presumption created by the demonstration of a *prima facie* case, the court must enter judgment for the plaintiff, because no issue of fact remains in the case.

If the defendant articulates one or more legitimate, non-discriminatory reasons for its decision, however, the presumption of discrimination created by the demonstration of a *prima facie* case is eliminated, and the plaintiff then has both the obligation and opportunity to come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision, but simply a pretext for an unlawful,

---

[69] *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). *Cf. Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141-42 (2000).

discriminatory animus.  If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding the credibility of each of the defendant employer's articulated reasons, the employer is entitled to summary judgment on the plaintiff's claim.  *See*, *e.g.*, *Burdine*, 450 U.S. at 254; *Chapman*, 229 F.3d at 1024-25; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).

## A.    *Prima Facie* **Case**

The Eleventh Circuit has held that a plaintiff seeking to "make out a prima facie case of disparate treatment discrimination" in the termination of employment "must generally show that (1) plaintiff is a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) the employer treated similarly situated employees outside of the protected class more favorably; and (4) plaintiff was qualified to do the job." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at 802; *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001)); *see also*, *e.g.*, *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Here, defendant concedes that plaintiff has satisfied three of the four elements: she is a member of a protected class (female), she suffered an adverse employment action (discharge), and she was qualified to perform the duties of her job.[70]  Thus, the

---

[70] Doc. no. 35 (Brief in Support of Summary Judgment), at 13.

15

only *prima facie* element in dispute is the third:  whether plaintiff was treated less favorably than a similarly situated male, *i.e.*, Stanley Townsend.[71]  To establish that she was treated less favorably than Townsend, plaintiff must demonstrate that her conduct was nearly identical to his behavior.

> [T]o determine whether employees are similarly situated, we evaluate "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (citations and quotation marks omitted).  When making that determination, "[w]e require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."[72] *Id.*

*Burke-Fowler v. Orange County, Florida*, 447 F.3d 1319, 1323 (11th Cir. 2006).

"'The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed.'" *Maniccia*, 171 F.3d at 1368 (quoting *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 (11th Cir. 1998)).

The parties dispute the degree of similarity between the conduct of plaintiff and

---

[71] Plaintiff will not be compared to Roy Daniels, because she did not make any arguments regarding his alleged no call, no show in her EEOC charge, complaint, or brief, and because she did not dispute defendant's factual assertion that Lisa Rose White never knew of any no call, no show incident involving Daniels.

[72] In a footnote, designated as number 2 in the opinion, the Eleventh Circuit stated that it was bound to follow the "nearly identical" standard of *Maniccia*, rather than a "similar misconduct" standard used by a later panel. *See Walker v. Mortham*, 158 F.3d 1177, 1188-89 (11th Cir. 1998) (applying an "earliest case" rule to resolve intra-circuit splits).

Townsend.  Plaintiff argues that their conduct was identical:  *i.e.*, neither she nor Townsend appeared when scheduled to work, and neither complied with the company policy requiring them to phone management two hours in advance of their shifts. Defendant argues that their conduct is distinguishable:  *i.e.*, Townsend called management during his shift, while Crutcher never called in, despite the fact that her supervisors purportedly called her to ask where she was.

The no call, no show policy, as written in the employee handbook and memorandum, does not contain any distinction between those employees who call in *during* their absence and those who do not.[73]  However, Lisa Rose White testified that she has consistently excused those employees who call management *during* their shifts, not classifying them as no call, no show.[74]  "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules."  *Maniccia*, 171 F.3d at 1369 (quoting *Jones*, 137 F.3d at 1311).  Thus, there is nothing inherently improper in Lisa Rose White's policy of excusing employees from no call, no show discipline if they call in during their shifts.

Plaintiff argues that, because Townsend only called Millennium during his scheduled shift, his conduct and her own was "nearly identical."  Townsend received

---

[73] Employee Handbook, at ECF 22-23.

[74] Deposition of Lisa Rose White, at 133-35.

a phone call from a coworker alerting him to his need to call in to management.[75]  The record indicates that Karen Toney and Doris White *told* Crutcher that they called her.[76]  However, neither Toney nor Doris White was deposed, and Crutcher's testimony suggests that those calls may not have actually occurred.[77]  Even assuming Toney and Doris White did not call Crutcher, the record does not show that Townsend received any preferential treatment from management.  Townsend called in after a *coworker*, not a supervisor, called him:  *i.e.*, he was not prompted by management.[78]  Crutcher never called in.[79]  Thus, plaintiff's argument that she and Townsend engaged in "nearly identical" conduct stands on questionable footing.  However, even assuming plaintiff has satisfied her burden of demonstrating a *prima facie* case, she has failed to demonstrate that defendant's articulation of a legitimate explanation is pretext for discrimination.

---

[75] Deposition of Lisa Rose White, at 111-12; Personnel Action, Stanley Townsend, May 1, 2009.

[76] Deposition of Frederica Crutcher, at 179-80.

[77] *See id.* at 180-81.  The significant question is not whether Crutcher *received* the calls, as it is clearly not the fault of Millennium that she lost her phone, but whether management personnel actually attempted to contact her.

[78] Plaintiff does not allege that management called Townsend, and there is no evidence in the record to suggest the existence of such a call.  Thus, if Toney and Doris White *did* call Crutcher during her shift, *she* actually received preferential treatment from management, as compared to Townsend.

[79] Of course, the court recognizes that she may not have been able to call in while her phone was misplaced.  However, there is no evidence in the record suggesting that management was aware of the fact that she had lost her phone.

18

**B.**     **Legitimate Reason and Pretext**

To rebut the presumption of intentional discrimination raised by a plaintiff's demonstration of a *prima facie* case, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the" contested employment decision. *Burdine*, 450 U.S. at 255.  "An articulation not admitted into evidence will not suffice.  Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." *Id.* at 255 n.9.  Further, "[t]he explanation provided must be legally sufficient to justify a judgment for the defendant," *id.* at 255, even though "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons." *Id.* at 254.

Here, defendant has clearly articulated a legitimate, non-discriminatory reason for its decision to discharge plaintiff:  she did not report to work without calling before *or* during her shift to inform management of her absence, in violation of the company's no call, no show policy.  The company did not terminate Townsend because, under the company's policy as applied by Lisa Rose White, he avoided no call, no show status by calling management during the shift he missed.  Thus, defendant has provided a legitimate, non-discriminatory explanation both for Crutcher's termination and Townsend's retention.

Plaintiff may demonstrate pretext "by persuading the court that a discriminatory

19

reason more likely motived the employer," or "by showing that the employer's proffered explanation is unworthy of credence" — that is, it is not believable. *Jackson v. Alabama State Tenure Commission*, 405 F.3d 1276, 1289 (11th Cir. 2005); *see also*, *e.g.*, *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993) (*per curiam*) ("[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination.") (citation omitted).

In this final step of the analytical process, the plaintiff must be afforded the opportunity to "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804). The plaintiff's burden at this step of the analysis is that of "cast[ing] sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct' . . . ." *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Railway Co.*, 37 F.3d 603, 605 (11th Cir. 1994)); *see also Chapman*, 229 F.3d at 1024-25. The plaintiff shoulders that burden by demonstrating "such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. DuPont de Nemours & Company*, 100 F.3d 1061, 1072 (3d Cir. 1996)) (internal quotation marks omitted).

### 1.      Whether Millennium's explanation is unworthy of credence

Plaintiff argues that Lisa Rose White, testifying as defendant's corporate representative, "admit[ted] that Plaintiff's day off was approved and the reason for termination is not credible."[80] That statement misconstrues White's testimony. White simply admitted that, based on the note allegedly signed by Karen Toney that was shown to her during the deposition by plaintiff's counsel, Crutcher was not actually a no call, no show on June 9, 2009.[81]  However, that admission does not show that the reason for discharging Crutcher was "not credible."  To show pretext, the evidence must allow the inference that the reason was not credible *at the time of the discharge*. "'An employer who fires an employee *under the mistaken but honest impression* that the employee violated a work rule is not liable for discriminatory conduct.'" *Hudson v. Blue Cross Blue Shield of Alabama*, 431 F. App'x 868, 869 (11th Cir. 2011) (*per*

---

[80] Doc. no. 36, at 15.

[81] Deposition of Lisa Rose White, at 77 ("Q:  Would you agree that if Ms. Toney in fact gave Ms. Crutcher the day off on June 9, 2009, that Ms. Crutcher was not a no call/no show that day?  A:  Yes.").

*curiam*) (emphasis supplied) (quoting *Damon v. Fleming Supermarkets of Florida*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999)).  Nothing in the record suggests that White, who made the final decision to discharge Crutcher, knew that Crutcher actually had the day off at the time she approved the discharge.[82]

The evidence shows that Karen Toney approved the day off, and thus *should* have been aware of it.  However, Crutcher did not say anything about the note during her termination meeting, with Toney present.[83]  For reasons unknown, plaintiff chose not to depose Toney.  Thus, the evidence of Toney's thought process is limited to her declaration, and she was not directly questioned or forced to explain herself.  It is possible that she knew Crutcher had the day off, and deliberately ignored that knowledge in labeling Crutcher as a no call, no show.  It is also possible that she simply forgot about the day off.  In her deposition, plaintiff made conclusory accusations that Toney was conspiring against her.[84]  However, she has produced no evidence suggesting that Lisa Rose White, the decisionmaker, had reason to doubt that Crutcher was a no call, no show.[85]  It is clear that Crutcher was scheduled to have the

---

[82] The closest Crutcher comes to producing such evidence is her testimony that White refused to discuss the discharge or look at the note when Crutcher tried to show it to her *after* the discharge occurred.  Deposition of Frederica Crutcher, at 221-22.

[83] *Id.* at 185.  Crutcher testified that she left the meeting, rather than further explaining her absence, because she "couldn't get a word in."  *Id.*

[84] *Id.* at 186, 198-99.

[85] Plaintiff has not articulated a so-called "cat's paw" theory of liability, by which a plaintiff can allege that the employee actually harboring discriminatory animus (Toney) manipulated a

day off, and was not actually a no call, no show.  But the evidence does not suggest that there is any reason to doubt that, contemporaneously with her decision to terminate Crutcher, Lisa Rose White legitimately and honestly believed Crutcher had been a no call, no show.  Thus, the fact that Crutcher was not actually a no call, no show does not demonstrate pretext.

The decision to terminate Crutcher as a no call, no show certainly appears to have been a mistaken one.  However,

> [f]ederal courts "do not sit as a super-personnel department that reexamines an entity's business decisions.  No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [federal employment law] does not interfere.  Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior."

*Chapman*, 229 F.3d at 1030 (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)) (first bracketed alteration in *Chapman*, second bracketed alteration supplied).

## 2.    Deviation from policy

Plaintiff also argues that, by not classifying Townsend's absence as a no call, no show incident, defendant violated its own procedure.  "An employer's violation of its own normal . . . procedure may be evidence of pretext."  *Bass v. Board of County*

---

supervisor (Lisa Rose White) into taking the adverse action.  Nor would the evidence be likely to support such a theory, as plaintiff has not produced any *evidence*, other than her personal suspicions, to suggest that Toney was actually intent on firing her.

*Commissioners*, 256 F.3d 1095, 1108 (11th Cir. 2001) *overruled on other grounds by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008).  Deviation from policy, on its own, does not demonstrate discriminatory animus; "[t]o establish pretext, a plaintiff must show that the deviation from the policy occurred in a discriminatory manner." *Rojas v. Florida*, 285 F.3d 1339, 1344 n.4 (11th Cir. 2002) (citing *Brown v. American Honda Motor Co.*, 939 F.2d 946, 952 (11th Cir. 1991)).  Furthermore, "no discriminatory intent is shown if 'an employer applies a rule differently to people it believes are differently situated.'"  *Hudson*, 431 F. App'x at 870 (quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1186 (11th Cir. 1984)).

Plaintiff argues that defendant deviated from its policy in a discriminatory manner.  The company's written policy on no call, no show violations does not include an exception to the rule for employees who call management during their shifts.[86]  However, Townsend was not classified as no call, no show, because he made such a call.[87]  Thus, plaintiff argues, defendant deviated from its written policy to the benefit of a male employee, allowing him to keep his job.

Conversely, defendant argues that any deviation from the company's written policy was uniformly applied.  In essence, defendant argues, Lisa Rose White created

---

[86] Employee Handbook, at ECF 22-23.

[87] Personnel Action, Stanley Townsend, May 1, 2009; *see also* Deposition of Lisa Rose White, at 111-12.

a modified policy, under which those who called in during their shifts would not be classified as no call, no show, and she applied that policy consistently to all employees, male and female. Defendant contends that the evidence does not demonstrate any deviation from *that* policy, under which Crutcher and Townsend were viewed as differently situated, because Crutcher did not call in during her shift.

Based on the evidence in the record, defendant's is the better view. Lisa Rose White testified that, under her supervision, employees who contact Millennium during their shifts are not classified as no call, no show.[88] Plaintiff has neither produced nor identified any evidence that casts any doubt on that testimony. Instead, she merely points to the fact that the written policy does not make such a distinction.[89] However, mere deviation from the written policy does not equate to pretext. *See Rojas*, 285 F.3d at 1344 n.4. The only evidence in the record suggests that a policy, albeit not identical to the written one, was consistently applied.

### 3. Discrimination

Finally, plaintiff has failed to produce any evidence that suggests that her termination was actually based on discrimination. *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) ("[A] reason is not

---

[88] Deposition of Lisa Rose White, at 133-35.

[89] Doc. no. 36, at 5 ("Disputed: Defendant's written policy regarding no-call, no-show occurrences does not make a distinction in regard to whether or not the employee does or does not answer a phone call from the employer.").

pretext for discrimination 'unless it is shown *both* that the reason was false, and that discrimination was the real reason.'") (quoting *Brooks v. County Commission of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting in turn *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993))) (emphasis in *St Mary's Honor Center*).  The evidence of gender discrimination in the record consists of Crutcher's conclusory assertions that men are more valuable (or at least more valued) in the healthcare profession than women, and that Toney was intent on firing her in retaliation for her earlier complaints regarding favorable treatment of male employees.[90]  Her accusation of *retaliation*, even if true, does not support a claim for gender *discrimination*, which is the only claim at issue here.  *Cf. Chambliss v. Louisiana-Pacific Corp.*, 481 F.3d, 1345 1348 (11th Cir. 2007) ("Thus, proof that Louisiana-Pacific violated the FMLA is irrelevant to the inquiry into whether Louisiana-Pacific discriminated against her based on her protected traits."); *Young v. Honeywell Technology Solutions, Inc.*, No. 1:06CV563-SRW, 2008 WL 901441, at *4 n.9 (M.D. Ala. March 31, 2008) (citing *Chambliss*, 481 F.3d at 1348, and holding that alleged violations of Privacy Act do not undermine employer's articulation of non-discriminatory reason).

---

[90] Deposition of Frederica Crutcher, at 200, 254.

## IV.  CONCLUSION AND ORDER

In consideration of the foregoing, defendant's motion for summary judgment on plaintiff's discharge claim is GRANTED.  Trial of plaintiff's remaining claims will be set by separate order.

DONE and ORDERED this 17th day of April, 2012.